ISAAC B. WILSON, Trustee, Appellee, v. JOSEPH HOLUB, Appellant.

**BANKRUPTCY:** Title—Contract of Purchase—Specific Performance.
1    The beneficial right of a bankrupt to have specific performance of a contract for the purchase of real estate passes to his trustee in bankruptcy.

**VENDOR AND PURCHASER:** Contract—Sale (?) or Option (?)    A
2    writing wherein the vendor agrees to sell and convey, and the vendee agrees to buy, on stated terms and conditions, and under which the

vendee takes possession, is a contract of sale, and not an option to buy.

**BANKRUPTCY:** Preference and Transfers—Rescission of Contract. A
3  rescission of a contract of purchase of real estate between a vendor and a bankrupt vendee is voidable by the trustee in bankruptcy when the rescission is made immediately preceding the bankruptcy proceedings, and is in fraud of the rights of the bankrupt's creditor, or works a preference to the vendor-creditor.

**SPECIFIC PERFORMANCE:** Discretion of Court—Trustee in Bank-
4  ruptcy. Principle reaffirmed that whether specific performance shall be granted rests largely in the discretion of the court. Record held to justify specific performance, on the prayer of a trustee in bankruptcy.

**Headnote 1:** 7 C. J. p. 123. **Headnote 2:** 39 Cyc. p. 1179. **Headnote 3:** 7 C. J. pp. 155, 170. **Headnote 4:** 36 Cyc. p. 548.

**Headnote 2:** 3 A. L. R. 576 (Anno.); 27 R. C. L. 336. **Headnote 4:** 25 R. C. L. 215. .

*Appeal from Keokuk District Court.*—CHARLES A. DEWEY, Judge.

OCTOBER 26, 1926.

Action for specific performance of a contract for the conveyance of real estate. The court granted a decree as prayed, and the defendant appeals.—*Affirmed.*

*McCoy & McCoy* and *Robert J. Shaw,* for appellant.

*Thomas J. Bray,* for appellee.

FAVILLE, J.—The bankrupt is the son of the appellant. The farm in question contains 116½ acres. The undisputed evidence shows that appellant bought the farm for $19,000, and received a deed therefor on March 8, 1915. The son Edd was a tenant on the farm for about 3 years. On or about the 16th day of March, 1918, the father and his wife and the son signed a certain written instrument, which is as follows:

"This contract made and entered into this 16th day of March A. D. 1918, by and between Joseph Holub and Josephine

Holub, his wife, parties of the first part and Edd Holub party of the second part, witnesseth:

"That for and in consideration of twelve thousand dollars, to be paid as hereinafter stated the first parties agree to sell and convey to the second party by a good and sufficient warranty deed, the following described real estate situated in Keokuk County, Iowa, to wit: The south half of the southeast quarter and the southeast quarter of the southwest quarter of Section six (6) in Township seventy-six (76) north, Range thirteen (13) west of the 5th P. M. (except one square acre in the southeast corner of said described tract used for school purposes).

"The payment of said twelve thousand dollars to be made to first parties as follows. Same to be paid on or before fifteen years from date hereof together with interest at the rate of 5½ per cent per annum, interest payable annually.

"On full payment of said amount the first parties will convey said premises to the second party by a good and sufficient warranty deed, and they bind themselves their heirs and assigns to carry out the terms of this agreement.

"It is further understood and agreed that the second party will take good care of the premises during the term of this agreement and will commit no waste, and will pay all taxes and assessment made against said premises and will keep the buildings thereon insured in a reasonable sum to protect this contract.

"And the second party will promptly pay the interest on said amount which may be due the first parties promptly when same becomes due and payable."

The testimony of the appellant is to the effect that he told the son Edd that he would make him a present of the $6,000 difference between the price he had paid for the farm and the price at which he would convey it to Edd, on condition that he would pay for the place. The reason that the instrument recites $12,000 is that it was orally agreed at the time that $1,000 should be put in improvements upon the place. Edd remained in possession of this farm under this contract for nearly 6 years. He made improvements on the farm, which the evidence tends to show were of about $3,000 in value. He never paid any of the interest on the contract, or any other amount. On or about the 4th day of February, 1925, Edd filed a voluntary petition in bankruptcy, and was duly adjudged to be a bankrupt. The

appellee was duly appointed trustee of his estate, and brings this action for specific performance of the said contract between Edd and the appellant.

I.  Appellant contends that there is no competent proof that claims have been filed and allowed against the bankrupt in the bankruptcy court, and that without such proof the appellee could not, in any event, recover in this action. An amendment to the Bankruptcy Act was passed June 25, 1910 (36 Statutes at Large [Part 1] 838). Section 8 of said act amends Clause 2 of Section 47, Subdivision a of the original Bankruptcy Act, and provides that the trustee in bankruptcy, ''as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied.'' The section would appear to be authority for the maintenance of this action, without the necessity of the trustee's proving the various claims that had been allowed and filed in the bankruptcy court. In any event, we think that the evidence in behalf of appellee was competent and sufficient to establish the fact that claims for the amount alleged in appellee's petition had been duly filed and allowed. This suit was not predicated upon said claims. The fact that they had been filed and allowed was merely a matter of evidence in this action, and we think the proof on said subject was sufficient.

II.  At the outset we are confronted with the proposition that nothing passed to the trustee; that the bankrupt had no rights under the contract that could pass to the trustee or be enforced by him. Withholding for the present any discussion of a claimed release or cancellation of the contract, and considering the contract as belonging to the bankrupt at the time of the adjudication, we are of the opinion that any rights the bankrupt may have had under said contract passed to the trustee.

1. BANKRUPTCY: title: contract of purchase: specific performance.

The general rule seems to be that *any* interest which the bankrupt may have in real estate will constitute an asset of his estate, provided it is a beneficial interest and one which he may have transferred by deed or assignment, or which might have been subjected to the claims of his creditors outside of the bankruptcy proceedings. Although the title to real property may be

in another, yet, if the bankrupt has an interest in the property, that interest will be available to the trustee in the administration of the estate. This follows from the statute. Where the purchaser of land under an uncompleted contract becomes bankrupt, whatever interest he has in the land will pass to his trustee, who is thereafter the proper person to maintain a bill in equity for the specific performance of the contract. *Rea v. Richards*, 56 Ala. 396; *McDonald v. McMahon's Admr.*, 66 Ala. 115; *Smith v. Hornesby*, 58 Ga. 529; *Christopherson v. Harrington*, 118 Minn. 42 (136 N. W. 289).

III. Appellant contends that the written instrument in question is a mere option to purchase, and not a contract binding upon the bankrupt; that the bankrupt acquired no rights thereunder which he could have enforced against the appellant; and that, therefore, his trustee, in any event, has no such rights.

In *Jester v. Gray*, 188 Iowa 1249, we said:

"An option without consideration is a mere offer, and is not binding until its acceptance. It necessarily follows that it may be withdrawn before its acceptance. In *Hopwood v. McCausland*, 120 Iowa 218, we said: 'An option is not a sale. It is not even an agreement for a sale. At best, it is but a right of election in the party receiving the same to exercise a privilege, and only when that privilege has been exercised by acceptance does it become a contract to sell.' "

The contract involved was not a mere option. By said instrument the vendor agrees to sell and convey to the second party the real estate described, at a fixed price. The contract provides the terms upon which the payment is "to be made to the first parties." The vendee agrees to take good care of the premises during the term of this agreement, to commit no waste, and to pay the taxes and assessments, and "promptly pay the interest on said amount which may be due the first parties promptly when the same becomes due and payable." We are of the opinion that this instrument was more than an option, and was in fact a contract of sale. It was accepted as such by the vendee, who took possession of the premises thereunder. It was not an instrument lacking in mutuality, and was one that either party could enforce against the other.

IV. It is the contention of the appellant that the parties

2. Vendor and
Purchaser:
contract:
sale (?) or
option (?)

mutually agreed to a cancellation and rescission of said contract, and that, at the time of the adjudication, the bankrupt had no interest whatever therein that could pass to the trustee. It is the claim of the appellant that this rescission was agreed to orally between the parties in December of 1924. The contract, however, was not surrendered, nor any formal cancellation made, until immediately preceding the time of the filing of the petition in bankruptcy. We hold that, under the evidence, there was no agreement established providing for the cancellation of the said contract between the parties until immediately preceding the filing of the petition in bankruptcy. There was such an agreement at said time, and an actual surrender of the contract, and appellant then leased the land to the bankrupt's wife. In order to maintain this action for specific performance, the trustee must first establish that the agreement of cancellation between the bankrupt and the appellant was void and ineffective, before he can reestablish the contract and claim any rights thereunder.

*3. BANKRUPTCY: preference and transfers: rescission of contract.*

Three questions suggest themselves at this point: (1) Did the parties have an absolute right to agree to a mutual cancellation of the contract, at the time? (2) Was the agreement to cancel voidable by the trustee because made to hinder, delay, and defraud the creditors of the bankrupt? (3) Did the agreement to cancel operate as a preference of the appellant over the other creditors of the bankrupt?

It is a familiar rule that the parties to any contract may mutually rescind or abandon the same. *Mortensen v. Frederickson Bros.*, 190 Iowa 832; *Quarton v. American Law Book Co.*, 143 Iowa 517; *Tague v. McColm*, 145 Iowa 179; *Pardoe v. Jones*, 161 Iowa 426; *Glock v. Howard & Wilson Colony Co.*, 123 Cal. 1 (55 Pac. 713). By such mutual rescission the parties to the contract lose all their rights thereunder.

The bankrupt had a right to agree to cancel the contract. He might give away his interest therein to any person. He could make such disposition of it as he saw fit. It cannot be seriously questioned that the agreement to cancel and abandon the contract was a legal agreement, and, as between the parties, must be upheld and enforced.

The question, then, is whether or not said agreement affected injuriously the rights of other parties, and whether the same can

be vacated and set aside at the instance of the trustee in bankruptcy; or, in other words, did the agreement of cancellation, under the circumstances, violate the provisions of the Bankruptcy Act, so that the trustee in bankruptcy may avoid said contract? Conceding that the mutual rescission and cancellation of the contract were had within four months prior to the adjudication in bankruptcy, we first consider the question as to whether such transfer can be vacated because it was intended to hinder, delay, and defraud the creditors of the bankrupt, within the purview of Section 67-e of the Bankruptcy Act. Under the statute, the trustee is in the position of a creditor who has a judgment upon which execution has been returned unsatisfied. This places the action of the trustee in close analogy to the action of a creditor's bill. *Crowley v. Brower*, 201 Iowa 257. The question becomes, then, one of fact. Was this agreement to cancel and abandon the outstanding contract one made by the bankrupt with the intent to hinder, delay, and defraud the creditors? If so, although the parties had a right to make it, and it would be binding as between them, it may be vacated at the instance of the trustee in bankruptcy. We have had occasion to consider a somewhat similar question in *Browning v. Kannow*, 202 Iowa 465, wherein the trustee sought to vacate a voluntary cancellation and release of a mortgage. We therein recognized the familiar rule that a voluntary transfer of property by a debtor who has not sufficient money or property to pay his debts is constructively fraudulent, and will be set aside at the suit of existing creditors. Under the evidence in this case, we hold that the contract of cancellation and abandonment between the bankrupt and the appellant was not consummated until immediately preceding the filing of the petition in voluntary bankruptcy by the bankrupt. At that time, both parties knew that the bankrupt was heavily involved, his creditors were pressing him, and an attempt to compromise with the creditors had been made by the appellant. We are forced to the conclusion, from the record, that the cancellation and abandonment of the outstanding contract which were consummated at that time, were made by the bankrupt with the intent to hinder, delay, and defraud his creditors, within the meaning of the bankruptcy statute, and that the appellant knew of such intent on the part of the bankrupt. It is unnecessary that we review the evidence at this point at

length, but we content ourselves with announcing our conclusion, and the statement that it is fully sustained and warranted by the evidence in the case. The authorities construing this provision of the Bankruptcy Act are very numerous, and citation is unnecessary.

Again, we think that, under the evidence, the agreement to cancel the contract was, in legal effect, a preference of the appellant as a creditor over other creditors of the bankrupt. Undoubtedly, under the contract in question the appellant was the creditor of the bankrupt. He could have sued upon the contract, for specific performance, and would have been entitled to money judgment for the amount due from the bankrupt under the contract. He could have foreclosed, under the statute. Section 12382, Code of 1924. The cancellation and abandonment of the contract were intended to be a satisfaction of the claim of the appellant as the creditor of the bankrupt, and necessarily created a preference in his behalf over the other creditors of the bankrupt.

We are forced to the conclusion that, as against the trustee in bankruptcy, the agreement between the appellant and the bankrupt to rescind and cancel the contract in question for the sale of real estate must be held to be void, and of no force and effect. The result is that the appellee, as trustee of the bankrupt, in law takes the said contract for the sale of real estate as an asset of the bankrupt's.

V. It is a familiar rule that specific performance rests largely in the sound discretion of the trial court, and may be denied, where it is inequitable to grant it. The trustee is entitled in this proceeding to enforce the rights which the bankrupt had at the time he attempted to cancel the contract, and must fully comply, under the decree, with all of the terms and conditions of the contract in making payment of the full amount due, before specific performance can be enforced. The failure of the bankrupt to make payment of interest under his contract for a period of 6 years would not, under all of the circumstances, render it inequitable to decree specific performance. He was entitled to 15 years' time in which to pay the principal, under his contract, and, with the knowledge of the appellant, was making permanent improvements upon the premises; and no

4. SPECIFIC PER-
FORMANCE: dis-
cretion of
court: trustee
in bankruptcy.

demand had been made by the appellant for the payment of the default interest. There is no claim of laches in the case. We see no legal or equitable reason why specific performance should not be decreed.

Other matters argued by counsel inhere in the previous discussion, and do not require consideration. It follows that the decree of the district court must be, and it is, affirmed.—*Affirmed.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.