GEORGE W. FISHER, Appellant, v. FIRST TRUST & SAVINGS BANK OF MUSCATINE, Appellee.

NOVEMBER 13, 1928.

*Charles P. Hanley, J. M. Kemble,* and *J. C. France,* for appellant.

*R. S. Jackson* and *Nichols, Tipton & Tipton,* for appellee.

MORLING, J.—Plaintiff was a customer and stockholder in defendant bank. Smith was defendant's vice president. The contract alleged was oral. Plaintiff's version of the transaction is as follows:

"On August 15, 1923, I had some money come in, and I went over to Mr. Smith,—asked him if he had a few municipal bonds of any kind. He said, 'I know what you want, George, but I haven't got them right at the present time. I will make a note of it, and have them for you in a few days.' He said, 'We have got some Muscatine improvement bonds coming in,' and he said, 'I will see that you get some of those, if you will just give me time until they come in.' I said, 'All right.' I told him it would be all right; I would wait until the bonds came. * * * It was about a week later, maybe, somewhere about there, I went to the First National side of the bank, and Mr. Smith called me over, and he said, 'George, those bonds that you want won't be ready then for 60, maybe 90, days;' and he said, 'I have always kept your money pretty well invested for you, and I know you don't want it laying around in a checking account. I will tell you what you do; you have requested bonds from me several times for some of the other farm mortgages you have got.' 'Now,' he said, 'I have got a good first mortgage here; if you will just take this for the present, until the bonds come in,' he said, 'I will exchange the bonds for them when they come.' I said, 'How much is the mortgage?' He says, 'Twelve thousand dollars.' I said, 'I haven't got money enough to take that mortgage right now.' He says, 'I know you haven't, but,' he said, 'we can fix that for you all right; you have got the D. McKay mortgage that you have got from us,—you give me that, give me your check for what money you have got, and give me a note for the balance, and,' he said, 'as quick as the bonds come, I will let you know, and you bring the mortgage back, and I will give you the bonds in exchange for it.' * * * I said, 'Well, you have always done that for me; I will go back and get the mortgage.' I went back and got the mortgage, and gave it to him, out of my box. He wrote out a check to the First Trust & Savings Bank for $3,047.88, and a note for $900. He

handed me the mortgage. I never looked at the mortgage. I took it and put it in my box. *.* * About November 1, I saw Mr. Benham; the cashier at the bank. * * * Mr. Smith came, with the bonds under his arm, and I could see they were Muscatine bonds, and I said, 'Mr. Smith, are those my bonds?' Mr. Smith said to me, in the presence of Mr. Benham, the cashier, 'Yes, George, part of these are yours; but I can't make the exchange now, I have left the bank.' I said, 'Is that so?' He said, 'Yes.' I said, 'Well, the bank will take care of it for me, 1 suppose.' He said, 'They certainly will; haven't we always taken care of everything we gave you?' "

For the purpose of the present discussion, we may accept plaintiff's testimony. The McKay mortgage, which plaintiff had previously got from defendant, was turned back to defendant. Plaintiff gave defendant his note and checks for the balance of the note and mortgage which he was taking, and which are called in the record the "Henderson loan." While plaintiff says "there was no discount mentioned," there is other evidence that a discount of $500 was allowed to him. We find nothing in the record with respect to the price to be made to plaintiff for the bonds, or their value. This Henderson paper was owned by Newell, an officer of a bank at Columbus Junction, who sent it to defendant bank for sale. Defendant contends that it did not own the Henderson paper, and that the transaction concerning it was the individual business of Smith, and was not bank business. In the settlement with Newell for the paper, Smith sold and received pay for stock in the Columbus Junction Bank, amounting to $4,400. Defendant, as its officers claim, collected interest on the Henderson paper under plaintiff's instructions, and accounted to plaintiff for it. It appears that the Henderson loan was excessive, in proportion to the security. The plaintiff's attorney testifies that he tendered to defendant's cashier the Henderson paper, "and told him that we wanted the bonds that we had bargained for, or our money. * * * I told him we wanted the bonds we had bought, that we were holding this mortgage for, or we wanted our money back, and the McKay mortgage. He declined to make the exchange, and did not give me any bonds or the McKay mortgage back, nor any money." Evidently plaintiff's concern was to get defendant to repurchase the paper, rather than to sell him bonds.

We do not pause to discuss the validity of plaintiff's alleged contract, nor the merits of the defenses, some of which are suggested by the foregoing statement. Defendant pleads that plaintiff has an adequate remedy at law (Code of 1927, Section 11130), and so urges in argument. Plaintiff contends that "a court of equity will specifically enforce an agreement to exchange or repurchase securities."

When equity awards the remedy of specific performance, it is because of the inadequacy of the remedy at law, and because equity can "do more perfect and complete justice." *Richmond v. Dubuque & S. C. R. Co.*, 33 Iowa 422, 480, 485; 4 Pomeroy's Equity Jurisprudence (4th Ed.), Section 1401, where it is said:

"The jurisdiction depending upon this broad principle is exercised in two classes of cases: (1) Where the subject-matter of the contract is of such a special nature, or of such a peculiar value, that the damages, when ascertained according to legal rules, would not be a just and reasonable substitute for or representative of that subject-matter in the hands of the party who is entitled to its benefit; or, in other words, where the damages are *inadequate*; (2) where, from some special and practical features or incidents of the contract, inhering either in its subject-matter, in its terms, or in the relations of the parties, it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty, so that *no* real compensation can be obtained by means of an action at law, or, in other words, where damages are *impracticable.*"

See 25 Ruling Case Law 228, Section 26; 36 Cyc. 543.

This court, in *McGraw Co. v. Zonta T. & R. Co.*, 194 Iowa 685, 688, said:

"Lest we be misunderstood, it may be said that there are cases in which specific performance of a contract for sale of personal property may be enforced; but they are exceptional. It is not entirely paradoxical to say that the right of a party to an executory contract to violate it and refuse performance is as sacred as the right to make it; but the exercise of such right involves his liability to answer in damages for his default; and in all ordinary cases, the recovery of damages is regarded as an adequate remedy."

We have recently discussed the remedies available at law

for breach of a contract to repurchase securities. *Hawkeye Sec. Fire Ins. Co. v. Central Tr. Co.,* 221 N. W. 486. Neither in the evidence nor arguments do we find suggestion, nor have we discovered any reason, why those remedies which may be so obtained at law are not full, complete, adequate, and speedy. The alleged contract under the facts here is not such a one as may ordinarily be enforced in equity by way of specific performance. Authorities above cited. Plaintiff's cited cases, *Miller v. Eller,* 192 Iowa 147, and *Sickles v. Lauman,* 185 Iowa 37, involved contracts for the sale of businesses with the accompanying good will, and they and the other authorities cited by him in support of his claim to the remedy here sought are not in point. There is neither claim that alternative relief by way of damages should have been awarded nor is there evidence supporting such a claim, if it were made. If a basis for estimating damages were shown, still plaintiff is not, on the record here, entitled to equitable relief, and equity will not, in such case, retain the suit for the purpose of awarding damages. *Braig v. Frye,* 199 Iowa 184. —*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.