No. 30,361.

Glen W. Dickinson, *Appellee,* v. Lawrence Lodge No. 4 of the Independent Order of Odd Fellows et al., *Appellants.*

(9 P. 2d 985.)

Opinion filed April 9, 1932.

J. B. *Wilson*, A. B. *Martin*, F. B. *Dodds*, R. B. *Stevens* and C. E. *Lindley*, all of Lawrence, for the appellants.

No appearance was made for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by Glen W. Dickinson, plaintiff, against Lawrence Lodge No. 4 of the Independent Order of Odd Fellows, a corporation, for damages for alleged breach of a contract which the defendant lodge had made to build a theater in Lawrence and to lease it for ten years to plaintiff's assignor, the Midland Theater and Realty Company.

Plaintiff's petition set out the material facts, which may be summarized thus: In 1926 the defendant lodge planned to build an Odd Fellows temple in Lawrence. On October 2, 1926, the trustees of the lodge, and by its authority, entered into a contract with the Midland Theater and Realty Company, a corporation, to construct a theater in the proposed temple and to lease it to the latter corporation for ten years with an option to extend that term for another decade. The theater was to be an elaborate affair and the agreed rent was fixed at $8,400 per annum in monthly payments of $700 payable in advance, and the lessee was to put up a bond for $26,000 for the prompt performance of all its contractual undertakings. The lodge agreed to start construction of the theater on or before January 1, 1927, and to have it ready for occupancy by September 1, 1927.

The contract provided that the lessee might assign it with the consent of the lessor. On December 11, 1926, the lease was assigned to this plaintiff and the lessor consented thereunto. The theater was never constructed and on August 25, 1930, this action was begun. Plaintiff's alleged damages aggregated $35,512.46, on some items of which he asked interest, and judgment was prayed therefor.

Defendants lodged general and special demurrers to the petition, some minor features of which were sustained, but otherwise overruled.

Defendants then answered and filed a cross petition therewith.

These contained various traverses, admissions and allegations of no present importance, and pleaded—

"For further answer to plaintiff's petition defendants say that if the plaintiff purchased or otherwise obtained ownership and possession of the lease involved in this action he did so for the express and avowed purpose of preventing the defendants from building any theater or theater structure which might be used in competition with the theaters which the plaintiff at all times with which this action is concerned has owned and operated in the city of Lawrence, Douglas county, Kansas. That on or about the 12th day of December, 1926, the plaintiff advised the defendant lodge, through its officers, that he owned the lease involved in this action, demanded that the defendants should not build the theater structure provided for by said lease, advised the defendants in the manner aforesaid that in case they did build said theater structure, he, the plaintiff, would not install the theater equipment as made obligatory upon the lessee in said lease, or operate a theater in said theater structure; that he would cause the same to be vacant and unused. That at divers and sundry times with which this action is concerned the plaintiff begged, entreated and demanded the defendants not to build a theater structure as provided by the terms of the lease, a copy of which is attached to plaintiff's petition."

Plaintiff moved to strike out parts of defendants' answer and cross petition—particularly the paragraph just quoted. This motion was sustained. The correctness of that ruling is the question presented in this appeal.

Why was not the stricken matter an appropriate defense to plaintiff's action? The contract to build the theater required defendant to commence its construction on or before January 1, 1927, and to have it ready for occupancy by the lessee, or plaintiff as assignee of the lessee, by September 1, 1927. But when the contract rights of the lessee were acquired by plaintiff he immediately repudiated the contract and notified defendants that he would not comply with its terms. He also begged and entreated defendants not to build the theater.

The stricken pleading may be a trifle short in that it did not expressly allege that defendants acquiesced in plaintiff's repudiation of the contract and yielded to his entreaty to forego the building of the theater, but those facts are virtually supplied by other allegations of the pleadings. And in that state of facts, as well as by plaintiff's silence for over three years and seven months following defendants' abandonment of the project to build the theater, it seems that the stricken matter in the answer and cross petition was germane to the issue tendered by plaintiff. In large measure it constituted a defense to it.

There is nothing more clearly settled in the law of contracts than that while still executory they may be abrogated or discharged by breach, rescission or repudiation by one party thereto and by assent thereto or acquiescence therein by the other party.

In 13 C. J. 602 it is said:

"Where a contract has been rescinded by mutual consent, the parties are as a general rule restored to their original rights with relation to the subject matter, and no action for breach can be maintained thereafter, nor are the parties bound by the contract with reference to their subsequent actions."

In 6 R. C. L. 929 it is said:

"It is sometimes said that a contract is considered to remain in force until it is rescinded by mutual consent, or until the opposite party does some act inconsistent with the duty imposed upon him by the contract, which amounts to· an abandonment, or that a contract will be treated as abandoned where the acts of one party, inconsistent with its existence, are acquiesced in by the other. Evidently what is meant by such statements is that one party may so wrongfully repudiate the contract as to authorize the other to renounce it and refuse to be longer bound thereby."

In *Flegal v. Hoover et al.*, 156 Pa. St. 276, cited in *George v. Lane*, 80 Kan. 94, 99, 102 Pac. 55, it was said:

"The parties to a contract may at any time rescind it, either in whole or in part, by mutual consent, and the surrender of their mutual rights is sufficient consideration." (Syl. ¶ 2.)

In *Wilson v. Holub*, 202 Ia. 549, 58 A. L. R. 646, where the cancellation of a contract by mutual consent was under scrutiny, the court said:

"It is a familiar rule that the parties to any contract may mutually rescind or abandon the same. [Citations.]" (p. 554.)

See, also, 13 C. J. 588 *et seq.*; 6 R. C. L. 921 *et seq.*; Notes in 1 L. R. A. 826, 827; 30 L. R. A. 33, 40 *et seq.*; and in L. R. A. 1915 B, 1, 15, *et seq.*

It follows that the ruling of the trial court was erroneous, and the cause is remanded with instructions to reinstate the stricken matter in defendants' pleading and for further proceedings consistent therewith.

Reversed and remanded.