WILLIAM HAMILTON V. P. H. FINNEGAN, Appellant.

**Election to Sell:** TENDER BY WRITTEN OFFER. A letter from plaintiff to defendant, stating that he was dissatisfied and wanted his money back, and that defendant should come and take the stock and give him his money, not only indicates an election by plaintiff to sell to defendant shares of stock, which he had bought of defendant, with an agreement of defendant to pay plaintiff, six months thereafter, a certain amount therefor,— plaintiff to have the right to accept or reject the offer indicated,—but constitutes a tender thereof, within Code, section 3061, providing that "an offer in writing * * * to deliver a written instrument or specific personal property, if not accepted, is equivalent to the actual tender" thereof.

**Damages:** REFUSAL OF BUYER TO TAKE STOCK SOLD. The seller of personal property, in an action against the purchaser for not taking and paying for it, will be held to have kept it as his own, so that he can recover only the difference between the market price at the time of delivery and the contract price; he having, after his tender thereof, which was refused, assumed to be the owner, and directed a sale, and given a proxy to vote the shares of stock constituting the property.

**SAME:** *Inability to deliver.* A seller of 51 shares of stock is not in a position to recover the purchase price,—the purchaser refusing to take and pay for it,—where he brings into court one certificate of 56 shares of stock, transferable only on the books of the corporation, on surrender of the certificate.

*Appeal from Dubuque District Court.*—HON. M. C. MATTHEWS, Judge.

WEDNESDAY, OCTOBER 22, 1902.

ACTION to recover for price of certain stock. The defendant appeals from a judgment entered against him.— *Reversed.*

*Andrew P. Gibbs* and *William Graham* for appellant.

*Delos E. Lyon* and *Hubert O'Donnell* for appellee.

LADD, C. J.—The plaintiff, having acquired, through defendant, certain stock in the Minneapolis Building & Loan Association, exchanged it with him for 51 shares of stock in the Leffler Magnetic Electric Railroad Company of Chicago, Ill. As a part of the transaction, the defendant executed this agreement: "Dubuque, Ia., Aug. 8, 1895. Six months after date, I promise to pay William Hamilton thirty-five ($35.00) dollars per share in cash for 51 shares of the Leffler Magnetic Electric R. R. Company stock. Said Hamilton has the right to accept or reject this offer at the expiration of this agreement. P. H. Finnegan. Office 405, 57 Dearborn St., Chicago, Ill. Witness: Patrick Hanovan." The court instructed the jury that: "Unless you find that the plaintiff did on the 8th day of February, 1896, or within a reasonable time thereafter, notify defendant of his election to sell said stock, and also tendered said stock to him, the plaintiff cannot recover, and your verdict must be for the defendant." If they did so find, they were to allow him compensation for the stock at the rate of $35 per share, with interest at the rate of 6 per cent. per annum from February 8, 1896. Appellant claims the evidence fails to show that the stock was ever tendered, and that the correct measure of damages was not as stated. The plaintiff testified that in the fore part of December, 1895, he wrote defendant that he was dissatisfied and wanted his money, and again February 4th to the same effect, and a day or two after February 8, 1896 (quoting) that: "The whole aim

of my letters was that he should come and take the stock,
—take his stock and give me my money. I am not much
in the writing business, and I tried to square myself as
much as I could, but I wanted him to take this stock and
give me my money. * * * I cannot state the exact
words I used, but, as near as I can state, I wanted him to
pay me my money and take the stock. * * * Never
have seen him nor had any opportunity to tender him his
stock, and have never asked him for the money person-
ally." He further testified that these letters were addres-
sed to Finnegan at the address given in the agreement, and
duly mailed; that in May or June, 1896, he received a let-
ter from defendant, purporting to come from Minneapolis,
Minn., saying, "I received your two letters O. K., but I hope
you will pardon me for not answering before this;" sug-
gesting a trade in October following, and bespeaking pa-
tience till then. On the other hand, defendant swore that
he met plaintiff in Dubuque on the 3d day of January,
1896, and also on the 25th day of the same month, at which
times he said that he would keep the stock; that in the
latter part of February, and again in June, he expressed
satisfaction with having retained it; that his address was
that given on the agreement, and, though absent much,
his mail was always forwarded to him; that he received
no letter from Hamilton between August 8, 1895, and
March 10, 1896. In a letter dated June 3, 1896, plaintiff
inquired: "Now, I want you to let me know how the
electric R. R. is getting along. Tell me the truth about
it, let it be good or bad. If bad, I will not depend upon
it." On the 10th of October following he wrote a letter
of warm friendship, without mentioning the stock, and in
a letter of January 7, 1897, directed him "to try and sell
my stock for me if you possibly can, at $35 per share," and
added by way of postscript, "If you can get more for the
stock, do so, for I think it is worth more." May 29, 1898,

VOL. 117 IOWA.—40.

he warned defendant of a possible suit by another, but made no mention of the alleged failure of Finnegan to take the stock as agreed. One Gibbs testified to having seen the parties talking at the hotel in Dubuque January 25, 1896. It should also be added that plaintiff executed a proxy to defendant to vote the stock at all elections or meetings of the stockholders of the company, and on December 24, 1897, revoked this in another to P. W. Leffier. While the letters introduced cast serious doubt on plaintiff's claim of having written, as he testified, in February, 1896, and tend strongly to support defendant's theory of the case, yet the jury may have found the letters were written as claimed, and reached defendant. If so, they indicated an election to sell. Did they also contain a tender of the stock? Our statute provides that "an offer in writing * * * to deliver a written instrument or specific personal property, if not accepted, is equivalent to the actual tender" thereof. Section 3061, Code. All necessary was an offer to turn over the stock upon payment of the stipulated price. This, as the majority of the court thinks, was the purport of the letters,—that, though not couched in formal or technical language, the meaning reasonably to be inferred is that plaintiff had concluded to sell, and therein offered the stock to Finnegan. Some stress is laid on the fact that defendant's residence was unknown to plaintiff, and his address, as given, in a city of another state. Of course, the situation of the parties is entitled to consideration in determining what was intended by Hamilton, and must have been understood by Finnegan. The writer, however, with whom Mr. Justice Deemer concurs, is of the opinion that, while an election to sell is clearly indicated, the language used did not constitute a tender of the stock. Simply a readiness or willingness to turn it over was manifested, and this falls far short of an offer to deliver. *Eastman v. District Tp. of Rapids*, 21 Iowa, 590. Independent of the statute, there must have

been an actual offer of the property. I think an offer in writing must be as direct and unequivocal as the oral proposition, and that an invitation to come and take should not be construed to be anything more than a willingness to part with the. stock under the terms of the stipulation. Yielding however, as I must to superiority in numbers, the letters are held to contain a sufficient tender.

II. Nor do we think the jury were correctly instructed as to the measure of damages In *Dustan v. McAndrew*, 44 N. Y. 72, it is said: "The vendor of personal property, in a suit against the vendee for not taking and paying for the property, has the choice, ordinarily, of one of three methods to indemnify himself: (1) He may store or retain the property for the vendee, and sue him for the entire purchase price; (2) he may sell the property, acting as the agent, for this purpose, of the vendee, and recover the difference between the contract price and the price obtained on such resale; or (3) he may keep the property as his own, and recover the difference between the market price at the time and place of delivery and the contract price." The evidence plainly shows that the plaintiff can only recover under the last mentioned rule. In his letters to defendant he assumed to be the owner, and directed sale, of the stock. He withdrew the proxy from defendant, and transferred it to another. After exercising these acts of ownership over the stock, subsequent to the tender, if any, he was not in a situation to claim that the title had passed to and remained in the vendee, so that an action for the price might be maintained. The seller in such a case must treat the goods at all times as the property of the buyer, to be entitled to recover. Again, the property was not in a condition to be delivered at the time of trial.

The stock produced in court was one certificate, of 56 shares, "transferable only on the books of the corporation, in person or by attorney, on surrender of this certifi-

cate," whereas the contract called for but 51 shares. Before recovery of the contract price can be hâd, the property must at least be in a condition to be delivered upon the acceptance of the tender previously made. Says Mr. Parsons: Chattels "may be mingled with others of the like kind which he is not to deliver, or they may need some act of separation or identification or completion before they could become the property of the other party. As in sales, property in chattels does not pass while any such act remains to be done; so, if there be an obligation to deliver these articles, it may be said, as a general rule, that the obligation is not discharged as long as anything is left undone which would prevent the property passing under a sale." 2 Parson Contracts, p. 762. In 2 Sutherland, on Damages, section 644, the rule is laid down that: "To entitle the seller to recover the full value,—either the contract or the market price,—the sale must be executed so as to pass the title to the purchaser; the property must be at his risk, and thus qualified to bring trover for it. Then, and not till then, an action either for the goods sold and delivered, or bargained and sold, may be maintained, —the former if there has been delivery, and the latter if there has not. The sale of a specific chattel passes the property in it to the vendee without delivery, and the risk of property which is the subject of sale attends the title. But where the sale is of goods generally, no property in them passes until there is a subsequent appropriation, according to the contract, of the goods to which it applies." In order to recover the purchase price under contract, the specific property must have been appropriated by the vendor to the sale, and everything done, except actual acceptance under the terms of the sale by vendee. But here the 51 shares had not been segregated from the certificate of a greater number, and the transfer of the stock had neither been made, nor an attorney appointed with power to do so. The plaintiff retained absolute control of the stock

and was in addition, given judgment for its value. We think that, under the circumstances, he should have been limited in recovery to the difference between the market price of the stock, February 8, 1886, and the contract price. See *McCraken v. Webb*, 36 Iowa, 551; *Scale Co. v. Beed*, 52 Iowa, 307; *Cannon v. Folsom*, 2 Iowa, 101; *Osgood v. Bauder*, 75 Iowa, 550; *Manufacturing Co. v. Marsh*, 49 Iowa, 11; *Bagley v. Findlay*, 82 Ill. 524; Tiedeman Sales, section 333; *Crawford v. Earl*, 38 Wis. 312; *Laubach v. Laubach*, 73 Pa. St. 387; 21 Am. & Eng. Enc. Law, 581, and note.

III. The petition was in two counts. The first was based on a sale under the contract; the second, on allega-tions of fraud inducing the plaintiff to purchase the stock. The motion to strike and for more specific statement was rightly overruled, as was also the motion to require plain-tiff to elect on which count he would proceed to trial. If the claims contained in the respective counts are inconsis-tent, wherein has not been pointed out.

Other errors assigned are disposed of by what has been said, or will not be likely to occur on another trial.— REVERSED.