HAWKEYE SECURITIES FIRE INSURANCE COMPANY, Appellant, v. CENTRAL TRUST COMPANY OF DES MOINES et al., Appellees.

No. 38327.

574

OCTOBER 16, 1928.

REHEARING DENIED JUNE 24, 1929.

*Carr, Cox, Evans & Riley* and *Steele & Miles,* for appellant.

*Bracewell, Murrow & Poston,* for appellee.

MORLING, J.—Plaintiff's sole complaint is of the refusal to enter personal judgment against the Central Trust Company upon an instrument which, after reciting the sale of the mortgage sued upon to plaintiff, provides:

"We agree with the Hawkeye Securities Fire Insurance Company to look after the collection of all interest on this loan,

remitting the same to your company without charges, and generally look after the loan, the same as if our own. We further agree that we will repurchase this loan for face plus accrued interest in event of the interest becoming delinquent or the principal not being paid promptly when the loan matures.''

In our view of the case, we need not be detained with a discussion of the validity of the agreement, which for various reasons is assailed by the Central Trust Company. Without so deciding, we shall assume, for the purpose of the appeal, that the instrument is the Central Trust Company's valid contract. Nor shall we discuss the Trust Company's contention of improper joinder.

As will be seen from an inspection of the instrument under consideration, the Trust Company's agreement is to look after the loan and collection of interest, and to repurchase ''for face  plus accrued interest in event of the interest becoming delinquent or the principal not being paid promptly when the loan matures.'' No complaint is made of breach of agreement to look after the loan and the collection of interest. Plaintiff introduced evidence to the effect that the Trust Company repudiated the agreement to repurchase, denied any liability on account of it, and refused to return what it had received from plaintiff for the paper. The assignment of the mortgage by the Trust Company to the plaintiff had been previously recorded. We find no evidence of a tender of a reassignment or of a redelivery of the paper. So far as concerns plaintiff's right to recover for damages, or to resell the property as agent, the Trust Company may be held to have waived formal tender. The plaintiff's failure, however, to make such a tender has an important bearing upon the theory upon which plaintiff seeks to maintain its present action. That theory is not that the Trust Company is the owner of the securities, or that plaintiff is holding them for the Trust Company; is not that the plaintiff is the seller to the Trust Company (or buyer) of specific personal property the title to which has passed from plaintiff to the Trust Company, property which it has tendered to the company and now holds for it. The plaintiff in argument formulates its theory as follows:

"The sole question to be determined upon this appeal is the right of the plaintiff to recover a judgment against the defendant Central Trust Company upon the note in suit, by reason of defendant's promise contained in its letter," above set out. Under that promise * * * it bound itself to guarantee the payment of the note upon default of the makers. * * * The terms of the note fixed the extent of the defendant's liability. Plaintiff's right of action, asserted in this proceeding, against the defendant is bottomed upon the liability assumed by the defendant in its written promise, measured by the terms of the note. The plaintiff seeks a recovery against the defendant for the amount of the note plus accrued interest and costs, and further asks that the security be foreclosed, sold under special execution, and the proceeds applied in satisfaction of that judgment. * * * In conclusion, we submit that the obligation of the defendant upon Exhibit E (the agreement referred to) is binding and enforcible against it, and that the plaintiff is entitled to a deficiency judgment against the defendant for the amount remaining unpaid on the note in suit after the proceeds from the sale of the property have been applied upon it."

In its reply argument plaintiff asserts:

"The only issue presented by this appeal is the right of the plaintiff to judgment against the Central Trust Company in this foreclosure proceeding, because of the liability assumed by it as a result of the execution of the so-called repurchase agreement. * * * It is submitted that this repurchase agreement imposes a liability upon the appellee which is the equivalent of a liability of an indorser, and, consequently, comes within the plain terms" of Section 10975, Code of 1927, which, at plaintiff's option, permits action against any or all of the parties bound by negotiable paper "on the same or separate instruments, or by any liability growing out of the same."

Plaintiff argues further:

"It is obvious that the obligation assumed to repurchase the note at 'face plus accrued interest, in the event of interest becoming delinquent, or the principal not being paid promptly when the loan matures,' is the obligation of an indorser. It thus imposes an obligation to pay to the plaintiff the face of the loan,

plus interest \* \* \* The use of the word 'repurchase,' instead of 'pay,' is not significant. \* \* \* It may be that by the institution of this proceeding plaintiff waived its right to institute an action for damages on account of the breach of the repurchase agreement, but it certainly has not waived the right, which we contended it has, to enforce the liability of an indorser against the Central Trust Company on account of the execution of the agreement in question.''

We do not understand plaintiff to argue seriously that the defendant's contract is one of guaranty. By the agreement the Trust Company in no wise purported to bind itself that the  maker of the note would pay it or perform the covenants of the mortgage, and that the Trust Company would be answerable for such maker's non-fulfillment. The agreement is to repurchase in the event of default,—not to pay the debt; to reacquire the paper with the rights of a holder thereof,—not to pay another's debt, with the merely implied right to reimbursement. See 28 Corpus Juris 886, 1039. The instrument is wholly lacking in evidence of intention to assume the obligation of a guarantor.

The relationship between the parties to the contract before us is that of buyer and seller. As the record stands here, by performing it, the Central Trust Company obtains the instruments as they are. In enforcing it, the plaintiff proceeds on the basis of compelling the Trust Company to take the instruments as they are. Manifestly, the rights and remedies of both parties to a contract of guaranty are so different from those to a contract of sale or of sale and resale (or return) that it would be making an entirely new contract for each of them to assimilate the present agreement to one of guaranty, and to compel them to take proceedings and resort to remedies which they never contemplated. See 28 Corpus Juris 1009 *et seq.*, 1037 *et seq.*, 37 Cyc. 388 *et seq.*, 402 *et seq.* By indorsing without recourse, the Trust Company indicated a purpose not to assume a liability on the paper.

''The indorsement must be written on the instrument itself, or upon a paper attached thereto. \* \* \*'' Code of 1927, Section 9491.

We do not hold that, under this section, physical attachment

at the time of the indorsement is, under all circumstances, essential. See 8 Corpus Juris 351. There must, however, be the intent (implied as the legal result of the instrument, if not in terms expressed) to indorse, and to incur the liability of an indorser. In this case the defendant did indorse the note, but the indorsement was without recourse. The Trust Company did not, therefore, intend to indorse generally, but by qualified indorsement. It gave such an indorsement, and such indorsement was accepted. Code of 1927, Section 9498. The contract of an indorser without qualification is that the instrument is genuine, and what it purports to be; that the indorser has good title; that all prior parties had capacity; that he has no knowledge of any fact impairing the validity or rendering the instrument valueless; that the instrument is, at the time of the indorsement, valid and subsisting; and that, on due presentment, it will be honored, and if dishonored, "and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof * * *" Code of 1927, Sections 9525, 9526; 8 Corpus Juris 376 *et seq.*

Clearly, there was neither an indorsement without qualification nor any intention or agreement expressed to make such indorsement or assume the liability of an indorser. The agreement is, on the happening of the required condition, to "repurchase this loan" for the stipulated price. Is the plaintiff in position to claim of the Trust Company a recovery upon such an agreement? Defendant agrees that, on the happening of conditions specified, it will purchase of defendant the loan. The breach claimed is that such conditions happened, and that, on demand, the Trust Company refused to take back the paper and pay for it.

In *Hamilton v. Finnegan*, 117 Iowa 623, there was an exchange in which plaintiff got 51 shares of stock. As a part of the transaction, defendant agreed 6 months after date to pay plaintiff $35 per share in cash for the stock. The agreement provided that plaintiff "has the right to accept or reject this offer at the expiration of this agreement." This court adopted, on the question of the plaintiff's remedy, the rule laid down in *Dustan v. McAndrew*, 44 N. Y. 72:

"The vendor of personal property, in a suit against the

vendee for not taking and paying for the property, has the choice, ordinarily, of either one of three methods to indemnify himself: (1) He may store or retain the property for the vendee, and sue him for the entire purchase price; (2) he may sell the property, acting as the agent, for this purpose, of the vendee, and recover the difference between the contract price and the price obtained on such resale; or (3) he may keep the property as his own, and recover the difference between the market price at the time and place of delivery and the contract price."

The plaintiff there (in *Hamilton v. Finnegan,* supra) after making the alleged tender of the stock to defendant, exercised acts of ownership. The court held that the plaintiff could only recover under the third item of the rule, and that, to recover for the price:

"The seller in such a case must treat the goods at all times as the property of the buyer, to be entitled to recover. Again, the property was not in a condition to be delivered at the time of trial. The stock produced in court was one certificate, of 56 shares, 'transferable only on the books of the corporation, in person or by attorney, on surrender of this certificate,' whereas the contract called for but 51 shares. Before recovery of the contract price can be had, the property must at least be in a condition to be delivered upon the acceptance of the tender previously made."

The evidence in this case is to the effect that plaintiff's attorney, shortly after the maturity of the note, "took up the matter of the repurchase by the Central Trust Company of this mortgage, as well as the others that were either matured or on which the interest had become delinquent at that time, * * * and was advised by Mr. West, some few days later, that he had submitted the matter to his board of directors, and that they had refused and declined to recognize that this repurchase agreement or any of the others had any validity, and declined to make the payment or to repurchase them or to return to the Hawkeye Securities Fire Insurance Company what they had received at the time the mortgages were purchased by that company from them. * * * A few days after my last interview with Mr. West, this action was commenced."

Under the rule stated, the plaintiff might have made an assignment of the mortgage to the Trust Company, offered the property to the Trust Company, and on refusal of the Trust Company to receive, it might have retained the securities for the Trust Company, and as its property, and sued it for the purchase price. This the plaintiff did not do. On the contrary, in a few days it commenced this suit, and in its petition alleged the execution of the note and mortgage, the indorsement and assignment of the paper to the plaintiff, including the special agreement that has been referred to, and alleged "that the aforesaid mortgage and notes are all past due and wholly unpaid * *. * That said notes and mortgage are now, and have been at all times since the assignment to this plaintiff by the Central Trust Company of Des Moines hereinbefore referred to, the property of this plaintiff." Plaintiff alleged that the mortgaged property was insufficient to satisfy judgment for the amount owed, and that "defendants who have assumed and agreed to pay the note and interest coupon secured by plaintiff's mortgage are not financially responsible and able to take care of any deficiency remaining unpaid after plaintiff has exhausted the security therefor * * *'' Plaintiff prayed judgment against the Georges, the Central Trust Company, and Rogers, "upon the said principal note for $6,000," and for foreclosure and general execution for deficiency, and for a receiver. By amendment, plaintiff made substituted prayer "that the written promise of the Central Trust Company of Des Moines to repurchase the note * * * be declared to be binding and enforcible against the said Central Trust Company of Des Moines, and that the plaintiff have and recover a judgment against the said Central Trust Company of Des Moines, Vernon H. George, Clara M. George, and Olin D. Rogers, upon said principal note for $6,000 * * *;'' prayed for foreclosure; prayed for general execution against the property of the Georges and Rogers, and that, in the event that they were returned unsatisfied, then general execution issue against the property of the Central Trust Company; prayed for the appointment of a receiver. The answer set up, among other things:

"That any claim that the plaintiff may have * * * would be a claim for damages arising by breach of said purported contract, and would not be triable in this cause. * * * that the

plaintiff has elected to retain the note and mortgage as its own property * * * and * * * by its own election has waived its right as against defendant on said contract Exhibit 'C,' and has elected to appropriate absolutely the note and mortgage sued upon in this action.''

The plaintiff became the owner of the securities in question. It has never relinquished its ownership. It is exercising the rights of an owner, including the right to recover judgment for the debt against the makers of the note and the purchaser of property who has assumed payment of the mortgage. It demands a receiver, and that the property pledged as security for the debt be sold at special execution sale. While it is seeking to recover upon the Trust Company's agreement to repurchase, it itself is controlling the property to be repurchased, determining for itself the remedies that may be resorted to for the recovery of the debt, depriving the Trust Company of all the rights which it would have as a repurchaser. The property which the Trust Company agreed to repurchase was the note and mortgage and the papers which might have been incidental to the loan. Plaintiff makes no pretense of selling the note and mortgage and to a right to recover the difference between the resale price and the price which the Trust Company agreed to pay. The price which might be obtained for the mortgaged property on sale on special execution is a very different thing from the price that might be obtained for the securities themselves, with the resulting right to adopt such remedies or negotiate for extension or other settlement which the purchaser of the securities would acquire. The plaintiff is in no wise proceeding in the method required of a vendor who is exercising his right to resell at the buyer's risk. 35 Cyc. 524. Nor is the plaintiff in the position of having made complete performance, and entitled to recover the contract price, as in *Vilsack v. Wilson*, 269 Pa. St. 77 (112 Atl. 17); *Tucker v. Scott*, 181 Cal. 734 (186 Pac. 150); 14 Corpus Juris 715 *et seq.* Plaintiff's position is that of a seller who, on purchaser's refusal to take and pay for the property, has elected to keep the property as its own. Its only remedy, therefore, was an action to recover its damages. *Hamilton v. Finnegan*, 117 Iowa 623; *Pate v. Ralston*, 158 Iowa 411; *Redhead Bros. v. Wyoming Cattle Inv. Co.*, 126 Iowa 410; 35 Cyc. 339; 14 Corpus Juris 715 *et seq.* The

measure of damages is the difference between the market value of the property and the contract price. Idem; *Art-Aseptible Furniture Co. v. Shannon*, 159 Iowa 225. Of the value of the securities there is not only no proof, but, as we understand from appellant's argument for such damages, the plaintiff makes no claim.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.