### 32312. McMullan v. Community Acceptance Corporation.

Gardner, J. (1) On September 25, 1947, one Byron A. Lewis purchased a secondhand Packard automobile from Clarence M. McMullan, doing business as McMullan Motors, whom we shall call the defendant. The defendant received from the purchaser a conditional-sales contract retaining title to the automobile. Lewis gave in exchange for the Packard a Ford automobile valued at $270. The balance of the purchase price, including carrying charges, was $403.44 divided into twelve consecutive monthly instalments of $33.62 each, beginning October 25, 1947. On the same date the automobile was purchased by Lewis from the defendant, the retention-of-title contract and notes were transferred and assigned to the Community Acceptance Corporation, whom we shall call the plaintiff. The plaintiff paid the defendant $297.60 for the contract and notes, and in addition thereto thereafter procured an insurance policy for twelve months on the Packard automobile at a cost of $60.50. When the first payment became due in October, 1947, Lewis, the purchaser, was confined in the hospital from an operation for appendicitis. His occupation was that of a painter. The plaintiff had handled his papers for the purchase of automobiles before. The plaintiff knew that Lewis was a painter; that he had had the operation, and after this physical trouble a rainy season followed in January and February of 1948. Lewis made no payment on the car at all. About March 17, 1948, the plaintiff repossessed the car and tendered it to the defendant and demanded that the defendant pay to the plaintiff the amount due the plaintiff under the contract and under the terms of the contract by which the plaintiff took over the sales contract and paid to the defendant the amount above mentioned, plus the insurance premium. The defendant refused to accept the car and refused to pay the plaintiff the money which it demanded. Thereupon the plaintiff left the car on the premises of the defendant, where it was located at the time of the trial. When the plaintiff repossessed the car it was in bad condition. It could not operate under its own power and was towed in by the plaintiff and left on the defendant's premises. The defendant and the plaintiff had had similar dealings before the contract in the instant case, and the defendant had paid the plaintiff under an identical contract where there was a default for as much as three or four months in the monthly payments, without any contention that the plaintiff had violated its obligations by not requiring the payments to be made promptly each month. The sales contract between the defendant and Lewis was transferred, as stated, to the plaintiff in the following language: "We hereby sell, assign, transfer, convey and set over to Community Acceptance Corporation, its successors and assigns, the contract on the reverse hereof, together with all our rights, title and interest in and to the property described therein and all rights, powers and remedies thereunder. . ." There appears in the sales contract between the defendant and Lewis in the first paragraph thereof one sentence, as follows: "Each of us, whether principal, surety, guarantor, endorser or other party hereto, hereby. . ." The next sentence

in the same paragraph is as follows: "Each of us further agrees that any instalment thereof may be extended at the request of any one of us without notice to us and without affecting our liability." After the sales contract was executed, the defendant signed what is termed dealers-repurchase agreement. The last sentence of the repurchase agreement reads: "If the maker fails to pay promptly any instalment of this contract, then the undersigned will pay to the holder thereof upon tender of delivery of the collateral security in contract on reverse side, an amount equal to the unpaid balance of this contract less refund of unearned finance charge." The plaintiff, after the car had been placed on the lot of the defendant, entered suit against the defendant for $408.43, which the plaintiff contended was the balance due. Both sides introduced evidence and the trial court directed a verdict in favor of the plaintiff for $358.10. The amount which the plaintiff paid the defendant was $297.60 and the amount of the insurance paid out was $60.50. These two sums represent the amount of the directed verdict. An amended motion for a new trial was filed by the defendant, which was overruled. On this judgment he assigns error.

(a) We think the contract as between the plaintiff and the defendant was one of suretyship on the part of the defendant. See *W. T. Rawleigh Co.* v. *Overstreet,* 71 *Ga. App.* 871 (1, 2) (32 S. E. 2d, 574); *Arkansas Fuel Oil Co.* v. *Young,* 66 *Ga. App.* 33 (16 S. E. 2d, 909). Also, *Krasner* v. *Western Newspaper Union,* 58 *Ga. App.* 146 (198 S. E. 110). The failure of the plaintiff to proceed against Lewis or the automobile upon default of Lewis in the payment of the first instalment of the conditional-sales contract did not relieve the defendant of liability to the plaintiff. The defendant was charged with notice of such default. The defendant could have, by giving notice in accordance with § 103-205 of the Code require such action of the plaintiff. In *Hunnicutt* v. *Perot,* 100 *Ga.* 312 (2) (27 S. E. 787), the court said: "A surety on a promissory note, although the note be payable at a bank, is not entitled to notice of the non-payment thereof or of the protest of the same for non-payment." In *Timmons* v. *Butler, Stevens & Co.,* 138 *Ga.* 69, 71 (74 S. E. 784), the Supreme Court said: "A surety is given ample protection against the inaction of his creditor. If he desires to expedite payment, he may pay the debt and subrogate himself to all the rights of the creditor. Or he may give notice in writing to the creditor to proceed to collect the debt, and the creditor's failure to commence an action within three months (if the principal is within the jurisdiction of the State) will discharge the surety." What is generally known as a general guarantor is sometimes treated as a surety. This court in the case of *Fouché* v. *Cherokee National Bank,* 18 *Ga. App.* 569 (2) (90 S. E. 102), said: "A general guarantor for value, guaranteeing the payee of a promissory note against loss thereon, is not discharged by the failure of the creditor to institute legal proceedings against the maker, although the maker becomes insolvent. It is not necessary to sue the maker in order to maintain a suit against a general guarantor guaranteeing against loss. *Nance* v. *Winship Machine Co.,* 94 *Ga.* 649 (21 S. E. 901). See also *Kalmon* v. *Scarboro,* 11 *Ga. App.* 547 (75 S. E. 846)." See also *Davenport* v. *State Banking Co.,* 126 *Ga.* 136 (1) (54 S. E. 977, 8

L. R. A. (N. S.) 944, 115 Am. St. R. 68, 7 Ann. Cas. 1000). Let us keep in mind that under the assignment of the sales contract from the defendant to the plaintiff the plaintiff by the terms of the assignment stepped into the shoes of the defendant insofar as the privileges of the sales contract were concerned and the contract provided that the payments might be extended. The defendant contends that the clause which is termed a repurchasing agreement bound the plaintiff to take some action upon the default of any payment if Lewis did not promptly pay. We do not so construe the contract. Indeed, it is inferable from the evidence that the defendant was aware of the condition of the automobile and certainly he could have, by the exercise of the least diligence, ascertained whether or not the man for whom he was surety was making payment. We know of no provision of the law which would require the plaintiff to notify the defendant of such default. There seems to be required of a surety some sort of diligence on his part to ascertain whether his principal or creditor is complying with the contract on which he is surety.

(b) Counsel for the defendant cites and relies upon the case of *Williams Valve Co.* v. *Amorous,* 19 *Ga. App.* 155 (91 S. E. 240), and *Daniel* v. *Dalton News Co.,* 48 *Ga. App.* 772 (173 S. E. 727). A careful reading of these opinions cited on behalf of the defendant, in our judgment, do not sustain the contentions of the defendant.

The defendant further contends that since the contract in question did not provide any particular time within which the plaintiff should have returned the automobile and made demand upon the defendant, the contract should be construed as allowing a reasonable time for the performance of it; and that what is a reasonable time is a matter of fact to be determined by a jury under all the circumstances of the case. Numerous cases are cited to sustain this principle. This is a correct principle of law as sustained by numerous decisions of the appellate courts, but it is not applicable to the facts in the instant case. The contract specifically provided, as we have heretofore observed, that the plaintiff had the right, under the sales contract, to extend the payment of the instalments.

(c) There are two special grounds in the motion for a new trial. The first complains because the court directed a verdict for the plaintiff. We think we have covered this assignment. The court correctly directed a verdict so far as this special ground is concerned.

The second special ground is to the effect that, even though the court was authorized to direct a verdict, the fixing of the amount was a jury question, for that the court included in the amount of its directed verdict the insurance premium of $60.50, when as a matter of fact there should have been a rebate. The evidence is clear that, under the type of insurance policy here involved, there was no rebate to be had. In breaking down the carrying charges, and the amount due on the note by the plaintiff to the defendant on the sales contract, aside from the insurance, the plaintiff was entitled to recover $371.97 instead of the amount directed, $358.10. So it would seem that, in any way one could calculate this, the amount for which the court directed the verdict was not in excess of the amount due to the plaintiff by the defendant.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*

Decided January 18, 1949. Rehearing denied February 15, 1949.

*Len B. Guillebeau,* for plaintiff in error.
*Moise, Post & Gardner,* contra.