**McGRAW EDISON CREDIT CORPORA-TION, Plaintiff-Appellant,**

v.

**MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., Defendant-Appellee.**

No. 78–1225
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1978.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Glenville Haldi, Atlanta, Ga., for plaintiff-appellant.

Powell, Goldstein, Frazer & Murphy, Daniel M. Coursey, Jr., Jeffrey W. Kelley, Atlanta, Ga., for defendant-appellee.

Before RONEY, GEE and FAY, Circuit Judges.

RONEY, Circuit Judge:

The district court granted summary judgment for defendant Motorola Communications and Electronics, Inc. on both breach of contract and conversion counts of McGraw Edison Credit Corporation's complaint. Relying on *McMullan v. Community Acceptance Corp.*, 78 Ga.App. 616, 51

S.E.2d 575 (1949), the court held that under Georgia law, the repurchase agreements sued upon were guaranty contracts, on which liability is defeated if the holder has failed to sue the debtor after demand. The agreements in question cannot be interpreted on their face alone as guarantees. A factual question as to the contracts' interpretation thus arises, so summary judgment was inappropriate. We reverse the district court's summary judgment on the breach of contract count, and vacate the summary judgment on the conversion count for reconsideration in light of our decision.

Defendant Motorola Communications and Electronics, Inc. leased a total of 500 electronic "pagers" to Winston Services, Inc. by two agreements executed in 1973. Plaintiff McGraw Edison Credit Corporation financed the transactions by buying the paging equipment and the two leases from Motorola, so that McGraw Edison owned the equipment and received the lease payments from Winston Services. As part of this transaction, Motorola agreed to repurchase the equipment in the event Winston Services defaulted on the lease payments. The construction of these repurchase agreements forms the crux of this suit.

The repurchase agreements between Motorola and McGraw Edison were contained in two letters from Motorola, one for each lease. In the first letter, Motorola agreed in the event of Winston Services' default to repurchase the equipment "for the then existing used equipment value." In the second letter, Motorola agreed to repurchase the pagers sold under the other lease "for 80% of the loan balance at the time of default." Both agreements require the repossessed equipment to "be in good order and repair, normal wear and tear excepted." Neither agreement mentions the word guaranty or surety. The complete text of these letters is set out in the notes.[1]

1. The first letter states:
"Gentlemen:
Winston Services, Inc., is purchasing from this company Motorola Communications equipment. We understand you will finance this

equipment over 36 months in equal monthly payments from date of delivery.
In the event you will undertake this financing as hereinabove set forth, Motorola, will, in the case of default in payment by the Purchaser,

Winston Services defaulted on the lease payments to McGraw Edison, but delivered 307 of the pagers to Motorola's warehouse. Motorola notified McGraw Edison of this fact.

McGraw Edison filed suit against Motorola on the repurchase agreements and for conversion of the pagers which Winston Services had delivered to Motorola. Motorola moved for summary judgment, raising the defense that the agreements were guarantees, and that Motorola's obligation on them had been discharged under Georgia law when, upon demand, McGraw Edison failed to sue Winston Services within the time specified by statute. *See* Ga.Code Ann. § 103–205 (1968). Motorola did not submit any affidavits with its motion, but relied solely on the repurchase agreements themselves.

The district court granted summary judgment on both counts. As to the conversion count, the court held plaintiff had failed to make a proper factual showing of wrongdoing.

As to the breach of contract count, the court held that the agreements were guaranty contracts as a matter of law, relying on *McMullan v. Community Acceptance Corp.,* 78 Ga.App. 616, 51 S.E.2d 575 (1949). The district court erred in holding that *McMullan* makes *all* repurchase agreements guarantees as a matter of law. *McMullan* involved the sale of a used car under an installment contract, with the subsequent sale of the installment contract to a finance company. The dealer entered a contract with the finance company, termed the "dealer's repurchase agreement," whereby, upon default of the car's buyer and tender of the car, the dealer would pay "an amount equal to the unpaid balance" due on the car (less certain finance charges). The Georgia court determined that the contract was one of suretyship.

The agreements here are different from the one in *McMullan.* The *McMullan* agreement contained an unconditional promise to pay the outstanding debt of the car's purchaser, regardless of the value of the repossessed car (which was, in fact, almost worthless). The second Motorola agreement, promising to pay 80% of the loan balance, is closest to the *McMullan* agreement, but it contains an important difference. It is conditioned on the repossessed pagers being in "good order and repair." Thus, if the pagers are not in good order and repair, Motorola apparently has no obligation to pay 80% of the loan balance.

The first Motorola agreement is even further removed from that found to be a suretyship contract in *McMullan.* It obligates Motorola to repurchase the pagers for their "used equipment value." This figure is not related to the purchaser's outstanding debt. Motorola might thus be obligated to pay more, or less, than Winston Services' loan balance.

repurchase from you the equipment for the then existing used equipment value.
1. That said repossessed equipment shall be in good order and repair, normal wear and tear excepted;
2. That you will, by telegram or registered letter, notify the undersigned in the event of default in payment of any installment not later than sixty (60) days thereafter;
3. That said equipment shall be repossessed by you and tendered to the undersigned not later than ninety (90) days after the first default in payment in accordance with the tenor of the original evidence of indebtedness.
                    Very truly yours,"
The second letter states:
"Gentlemen:
Winston Services, Inc., is purchasing communications equipment from Motorola. We understand you will finance this equipment over 36 months in equal monthly payments from date of delivery.
In the event you finance this equipment, as set forth above, Motorola will, in the case of default in payment by the Purchaser, repurchase from you the equipment for 80% of the loan balance at the time of default.
1. That said repossessed equipment shall be in good order and repair, normal wear and tear excepted;
2. That you will, by telegram or registered letter, notify the undersigned in the event of default in payment of any installment not later than sixty (60) days thereafter;
3. That said equipment shall be repossessed by you and tendered to the undersigned as soon as possible after the first default in payment in accordance with the tenor of the original evidence of indebtedness.
                    Very truly yours,"

■ Under Georgia law, a contract of guaranty (or of surety) is the promise to "pay the debt of another." See Ga.Code Ann. § 103–101 (1968). These repurchase agreements, which do not mention the words guaranty or surety and are not closely tied to the outstanding debt of the purchaser, are not on their face guaranty contracts as a matter of law. A fuller development of the facts may show the agreements to be ones of suretyship, but additional evidence is necessary to aid in their interpretation. In this regard, we note that McGraw Edison submitted an affidavit from its president at the time of the events in question, which stated that all parties had agreed when these contracts were entered that Motorola was *not* in any way acting as a guarantor, but rather that the repurchase agreements were entered to ensure that McGraw Edison had a market in which to resell the equipment if that became necessary, with Motorola in no way liable for Winston Services' default.

We express no view on the ultimate merits of this issue. The discussion here has been for the purpose of showing why the district court's entry of summary judgment was inappropriate. When the facts are fully developed, these agreements may yet be found to be guaranty contracts.

For the foregoing reasons, we reverse the district court's grant of summary judgment on the breach of contract count, and vacate the grant of summary judgment on the conversion count.

REVERSED IN PART, VACATED IN PART, AND REMANDED.