In The Matter of the Foreclosure of Deed of Trust Executed and Given by Raymond Suttles and Wife, Joyce Suttles, Grantors, Dated the 30th day of January, 1979, As Appears of Record in Book 421 at Page 49, Chatham County Registry, R. HAYES HOFLER, III, TRUSTEE v. PAUL W. HILL and wife, PATRICIA B. HILL; RAYMOND SUTTLES and wife, JOYCE SUTTLES; and R & H CONCRETE PUMPING, INC.

In The Matter of the Foreclosure of Deed of Trust Executed and Given by Paul W. Hill and Wife, Patricia B. Hill, Grantors, Dated the 30th Day of January, 1979, As Appears of Record in Book 303 at Page 470, Orange County Registry, R. HAYES HOFLER, III, TRUSTEE v. PAUL W. HILL and wife, PATRICIA B. HILL; RAYMOND SUTTLES and wife, JOYCE SUTTLES; and R & H CONCRETE PUMPING, INC.

Nos. 456PA82 and 457PA82

(Filed 6 July 1984)

1. **Guaranty § 1; Mortgages and Deeds of Trust § 28; Principal and Surety § 1— foreclosure proceeding—execution of repurchase agreement in favor of bank as security for bank loan to third party—obligation of appellee neither that of guarantor nor surety**

   In a foreclosure proceeding where the parties had previously agreed that the bank would make a loan to R & H Company and take as security (1) a security interest in the equipment, (2) an "Unconditional Guaranty" executed by the individual defendants, (3) deeds of trust on the individual defendants' residences, and (4) a repurchase agreement with Allentown, the maker of the equipment for which the loan was being made, Allentown's status vis-a-vis the primary debt, while not being that of co-surety, was also not that of a guarantor as that concept has been traditionally considered. The individual defendants and Allentown were not equally obligated on the debt in that the "Unconditional Guaranty" made appellants primarily unconditional obligors, while the "Repurchase Agreement" made Allentown a secondary, conditional obligor. Therefore, neither G.S. 26-5 nor the equitable principle that co-sureties on a debt may not be subrogated to the rights of the creditor against each other applied to the case, and neither barred Allentown, as a signee of the R & H note and the individual defendants' "guaranty" and deeds of trust, from maintaining an action against the individual defendants for any amount due Allentown as assignee and foreclosing the deeds of trust in order to collect this amount.

2. **Mortgages and Deeds of Trust § 17.1— foreclosure proceedings—amount due assignee of debt not properly established**

   In a foreclosure proceeding where the evidence did not establish the amount, if any, due to Allentown as assignee of the corporate defendant's original obligation, the case must be remanded for further proceedings on the question of the amount before Allentown is entitled to foreclose the deeds of trust. G.S. 45-21.16(b).

ON discretionary review of decisions of the Court of Appeals reversing orders by *Judge Coy E. Brewer, Jr.*, presiding at the 2 June 1980 Session of ORANGE County Superior Court.

*Newsom, Graham, Hedrick, Murray, Bryson, Kennon & Faison by Robert O. Belo for appellee (Allentown Pneumatic Gun Company).*

*Dalton H. Loftin for defendant appellants (Paul W. Hill and wife, Patricia B. Hill).*

EXUM, Justice.

In reviewing the determination of the Court of Appeals that the substitute trustee, on behalf of appellee, may foreclose two deeds of trust, we must consider two issues: First, whether appellee, which as security for a bank loan to a third party executed a repurchase agreement in favor of the bank, and appellants, who as security for this same bank loan executed what is denominated a "guaranty" in favor of the bank, were co-sureties on the debt owed the bank. Second, whether there is any amount due appellee as a result of the transactions in question. We conclude the appellee and appellants are not co-sureties on the debt. Therefore, the principle that one co-surety cannot be subrogated to the rights of the principal creditor against another co-surety does not bar the foreclosure proceedings. We remand for further proceedings to determine whether any amount remains due to the appellee.

I.

In January 1979 Paul W. Hill and Raymond Suttles were the principal owners of R & H Concrete Pumping, Inc., the debtor-corporation. R & H purchased two pieces of concrete pumping equipment from appellee, Allentown Pneumatic Gun Company. To finance this purchase, R & H borrowed $195,000 from First Union National Bank. This loan was evidenced by a promissory note in favor of the bank. As collateral the bank took a security interest in the equipment, an "Unconditional Guaranty" executed by Hill and his wife and Suttles and his wife, and deeds of trust on the Hills' Orange County residence and the Suttles' Chatham County residence.

Before lending R & H the amount necessary to purchase this equipment, the bank entered into a repurchase agreement with Allentown which included the following provision:

Allentown Pneumatic Gun Company agrees that in the event that R & H Concrete defaults on their loan, Allentown will purchase the equipment from First Union National Bank for the balance of the unpaid principal on the loan. It is further agreed that Allentown will make the necessary arrangements to take physical possession of the equipment in the event of default. At that time, the Bank will assign all of its security interest and rights of recovery in the equipment to Allentown.

Both the Hills and Suttles were apparently aware of the repurchase agreement before they closed their loan with the bank.

In June 1979 R & H defaulted on the loan and delivered the equipment to the bank. One piece of the equipment was sold while it was in the bank's possession and the proceeds credited to the balance due. Upon notification by the bank of an intention to act upon the repurchase agreement, Allentown accepted delivery of the other piece of the equipment and executed a promissory note to the bank which apparently covered in full the remaining balance due on R & H's note. The bank assigned to Allentown its security interest in the equipment, the R & H note, the deeds of trust on the property of the Hills and Suttles, and the "Unconditional Guaranty" executed by the Hills and Suttles. Allentown sold the other piece of equipment and credited the debt accordingly.

Allentown requested the Hills and Suttles to pay the balance due it on the original note. The Hills and Suttles consistently refused to pay Allentown. Allentown instructed the substitute trustee, R. Hayes Hofler, III, to foreclose on the deeds of trust.

These cases began as two separate proceedings brought, respectively, in Chatham and Orange Counties, pursuant to N.C. Gen. Stat. § 45-21.16, by the substitute trustee in the deeds of trust to sell the two residences under the powers of sale contained in the deeds. The clerks in both counties ordered the sales to proceed and both the Hills and the Suttles appealed to the superior court. Since a common set of facts underlaid the controver-

sy in both proceedings, all parties stipulated that Judge Brewer, presiding in Orange County Superior Court, could hear and determine both appeals. After a hearing, Judge Brewer made findings and conclusions upon which he ordered that the sales not proceed. His order was entered, again by stipulation of the parties, in both Orange and Chatham Counties. The superior court concluded: (1) By virtue of the repurchase agreement Allentown became jointly and severally liable as co-sureties with the Hills and Suttles on R & H corporation's note. (2) Therefore, Allentown, after purchasing the equipment from the bank for the amount due on the note, could not become subrogated to and enforce the bank's rights under the deeds of trust against the Hills and Suttles. (3) The trustee could not, consequently, foreclose the deeds of trust.

Upon Allentown's appeal of both cases, the Court of Appeals reversed and remanded. The Court of Appeals' opinion, which governs its decisions in both cases, is reported at 58 N.C. App. 201, 293 S.E. 2d 238 (1982). Its actual decision in the Chatham County proceeding is unreported. The Court of Appeals first concluded that the repurchase agreement was properly offered in evidence on the questions of whether Allentown was the holder of a valid debt against the Hills and Suttles and whether the trustee had a right to foreclose. *See* N.C. Gen. Stat. § 45-21.16(d). It then held that even if Allentown was a co-surety with the Hills and Suttles and not thereby entitled to be subrogated to the bank's rights against them, the repurchase agreement constituted an agreement to the contrary. It provided, according to the Court of Appeals, that Allentown upon performance of its obligations under this agreement would be entitled to be assigned all the bank's rights against the Hills and Suttles. The Court of Appeals said:

> We do not believe that Allentown and the respondents may have been sureties for the payment of the note is determinative. In the cases cited by the respondents, *Insurance Co. v. Gibbs,* 260 N.C. 681, 133 S.E. 2d 669 (1963); *Bunker v. Llewellyn,* 221 N.C. 1, 18 S.E. 2d 717 (1942); and *Liles v. Rogers,* 113 N.C. 197, 18 S.E. 104 (1893), the court applied the principle that sureties are not entitled to subrogation against co-sureties. In none of these cases was there an agreement at the time the parties entered into the obligations that the party who paid a debt of the principal would have recourse against the other sureties. G.S. 26-5, upon which the respond-

ents also rely, provides a surety who performs under a contract may maintain an action for contribution against other sureties. It does not say that parties may not by contract agree to different rights than are provided by the statute. *See Commissioners v. Nichols*, 131 N.C. 501, 42 S.E. 938 (1902), for a case which holds that a surety may contract for a different indemnity than he would be given by law in the absence of such an agreement. *See also Bank v. Burch*, 145 N.C. 317, 59 S.E. 71 (1907), for language to this effect.

We hold that the parties are bound by the contract they entered and this contract gives Allentown the right to foreclose under the deed of trust. We reverse and remand for further proceedings pursuant to this opinion.

We allowed petitions for further review in both cases and elected to consolidate the two proceedings for purposes of argument, opinion and decision. Only the Hills have appeared, however, before us.

## II.

[1]  The trial court made the following conclusion of law:

That immediately following the closing of the loan and purchase transaction of January 30, 1979, Hill and wife, Suttles and wife, and Allentown were all jointly and severally liable for the payment of said R & H note to the bank, and were therefore co-sureties as to each other concerning their liability thereon.

This conclusion of law is fully reviewable on appeal and may be reversed if determined by us to be erroneous. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980). The Court of Appeals did not consider the validity of this conclusion of law, but concluded that the question of the parties' status as co-sureties was irrelevant. It said:

The respondents argue that the record shows and the court found that Allentown and the respondents were co-sureties and for this reason Allentown has no right of subrogation but is limited to contribution. We do not believe the fact that Allentown and the respondents may have been sureties for the payment of the note is determinative.

*Hofler v. Hill,* 58 N.C. App. at 204, 293 S.E. 2d at 239-40. The Court of Appeals went on to hold that Allentown, even if a co-surety, had merely contracted with the bank for a different liability and that the provisions of this contract could be enforced. *Id.* at 204, 293 S.E. 2d at 240.

The correctness of this conclusion is not altogether certain. Arguably one surety should not be allowed to contract with the principal for a different liability to the detriment of other sureties at least not without the consent of the other sureties. Further, it is arguable that the repurchase agreement does not give Allentown any right to be subrogated to the bank's recovery rights against the Hills and Suttles on the original note and deeds of trust securing it. The repurchase agreement refers only to the bank's duty to assign to Allentown "its security interest and rights of recovery *in the equipment.*" (Emphasis supplied.) This can reasonably be read as referring only to the bank's security interest in the equipment itself—not its interest in the original note and the deeds of trust. On the other hand, the "security interest and rights of recovery in the equipment" might also include all forms of security which the bank held on the debt. We find it unnecessary to reach this issue and express no opinion on the merits of the Court of Appeals' analysis. Unlike the Court of Appeals, we find each party's status vis-a-vis the primary debt to be the paramount consideration and the issue upon which the case should turn.

### III.

Appellants argue Allentown is a co-surety and equally obligated with them on the R & H debt. Therefore Allentown as the bank's assignee may not maintain an action against them for the outstanding balance due on the R & H note and may not foreclose the deeds of trust. Appellants argue that Allentown may only seek "a just and ratable" contribution from them. *See* N.C. Gen. Stat. § 26-5 (1965), which provides:

> Where there are two or more sureties for the performance of a contract, and one or more of them may have been compelled to perform and satisfy the same, or any part thereof, such surety may have and maintain an action against every other surety for a just and ratable proportion of the same

which may have been paid as aforesaid, whether a principal, interest or cost.

Equity requires that parties which are equally obligated on a debt be treated alike. *Smith v. Carr*, 128 N.C. 150, 38 S.E. 732 (1901). Therefore co-sureties, or equal obligors, on a debt may not be subrogated to the rights of the creditor against each other but are limited to a "just and ratable" contribution. *Peebles v. Gay*, 115 N.C. 38, 20 S.E. 173 (1894). We conclude that Allentown and appellants are not equally obligated on the R & H debt; therefore they are not co-sureties.

On 30 January 1979 the Hills and Suttles executed a document entitled "Unconditional Guaranty." This agreement purported to secure the promissory note of R & H in favor of the bank. The label on this agreement is not determinative of the nature of the contract. The substance rather than the form of the agreement controls, and this Court is not "bound by the labels which have been appended to the episode by the parties." *Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 53, 269 S.E. 2d 117, 123 (1980). The agreement executed by the Hills and Suttles states, in pertinent part:

> This guaranty is and shall remain an unconditional and continuing guaranty of payment and not of collection, shall remain in full force and effect irrespective of any interruption(s) in the business or other dealings and relations of Customer [R & H] with FUNB [the bank] and shall apply to and guarantee the due and punctual payment of all "Obligations of Customer [R & H]" due by Customer [R & H] to FUNB [the bank]. To that end, Guarantor hereby expressly waives any right to require FUNB [the bank] to bring any action against any Customer [R & H] or any other person(s) or to require that resort be had to any security or to any balance(s) of any deposit or other account(s) or debt(s) or credit(s) on the books of FUNB [the bank] in favor of Customer [R & H] or any other person(s). Guarantor acknowledges that its liabilities and obligations hereunder are primary rather than secondary, recognizing that Customer [R & H] is first above identified as "PRIMARY OBLIGOR" and undersigned are identified first above as "GUARANTOR(S)" solely for convenience in identification of the parties involved in this

Guaranty Agreement and in the obligation being secured hereby.

This document explicitly imposes primary and unconditional liability upon the Hills and Suttles for payment of R & H's debt to the bank. Appellants concede as much in their brief and argument before us.

To understand the significance of the primary, unconditional obligation incurred by the Hills and Suttles under this agreement, it may be helpful to consider distinctions sometimes drawn between contracts of guaranty and contracts of suretyship.

A guaranty is a promise to answer for the payment of a debt or the performance of some duty in the event of the failure of another person who is himself primarily liable for such payment or performance. A surety is a person who is primarily liable for the payment of the debt or the performance of the obligation of another. While both kinds of promises are forms of security, they differ in the nature of the promissor's liability. A guarantor's duty of performance is triggered at the time of the default of another. On the other hand, a surety is primarily liable for the discharge of the underlying obligation, and is engaged in a direct and original undertaking which is independent of any default.

*Id.* at 52-53, 117 S.E. 2d at 122 (citations omitted). *See generally* A Stearns, The Law of Suretyship § 1.5 at 5 (J. Elder, 5th ed. 1951); L. Simpson, Handbook on the Law of Suretyship 6-9 (1950). Essentially, a surety promises to do what the principal has promised to do and incurs an obligation which arises jointly with that of the principal. On the other hand, a guarantor promises to perform if the principal does not perform; a guarantor cannot, ordinarily, be sued jointly with the principal. "The obligation of a surety is primary, while that of a guarantor is collateral." *Wachovia Bank & Trust Co. v. Clifton,* 203 N.C. 483, 485, 166 S.E. 334, 335 (1932).

These distinctions illustrate the importance of ascertaining each party's obligation vis-a-vis the principal debt. A primary unconditional obligor does not stand in the same position as a collateral conditional obligor as far as the creditor is concerned. As the language of their "Unconditional Guaranty" demonstrates, the

Hills and Suttles incurred a primary unconditional obligation to pay the debt of R & H.

Allentown's obligation to the bank depends upon the substance of the repurchase agreement. By that document's terms Allentown agreed only to purchase the equipment from the bank for the balance of the unpaid principal on the loan if R & H defaulted. In return, the bank would assign all its security interest and rights of recovery in the equipment to Allentown. The key aspect of Allentown's obligation is its agreement to purchase the equipment from the bank. Therefore its obligation arose only if and when the bank regained possession of the equipment from R & H. For the bank to regain possession, R & H would have to relinquish possession, either voluntarily or involuntarily. Here R & H voluntarily turned the equipment over to the bank because it could not pay. Thus, under the repurchase agreement Allentown made itself collaterally and conditionally liable on the debt of R & H to the bank. It incurred an obligation which is more akin to that of a guarantor rather than a surety, as these concepts have been sometimes distinguished in our cases. *See Investment Properties of Asheville, Inc. v. Norburn,* 281 N.C. 191, 195, 188 S.E. 2d 342, 345 (1972). *See generally* Stearns, *supra,* § 4.5 at 64. We do not purport to hold, however, that Allentown's obligation was that of a guarantor as that concept has been traditionally considered. As the Court said in *Union Bank v. Winnebago Industries, Inc.,* 528 F. 2d 95, 98 (9th Cir. 1975), with reference to a fixed price repurchase agreement, Allentown's obligations under its repurchase agreement are "enforceable according to its terms without reference to principles of guarantee or suretyship."

The nature of the obligation created by a repurchase agreement, such as the one executed by Allentown in the instant case, is a question of first impression in North Carolina. We have been cited by appellants to only one case from another jurisdiction holding that a repurchase agreement similar to the one at bar constitutes a contract of suretyship between the obligor on the repurchase agreement and the principal creditor. *McMullan v. Community Acceptance Corp.,* 78 Ga. App. 616, 51 S.E. 2d 575 (1949). In none of the other cases relied on by appellants did the court construe a repurchase agreement to constitute a contract of either suretyship or guaranty. *McGraw Edison Credit Corporation v. Motorola Communications and Electronics, Inc.,* 579 F. 2d

885 (5th Cir. 1978), distinguishes *McMullan* on the ground that the repurchaser before the Fifth Circuit promised to pay only 80 percent of the loan balance in one agreement and the other agreement was conditioned on the repossessed collateral being in "good order and repair." The Fifth Circuit, applying Georgia law, concluded that *McMullan* did not make "*all* repurchase agreements guaranties as a matter of law." *Id.* at 887. The Fifth Circuit reversed a summary judgment against the obligor on the repurchase agreements because the summary judgment was based on the district court's conclusion that under *McMullan* all such repurchase agreements were guaranty contracts as a matter of law. The Fifth Circuit said:

> These repurchase agreements, which do not mention the words guaranty or surety and are not closely tied to the outstanding debt of the purchaser, are not on their face guaranty contracts as a matter of law. A fuller development of the facts may show the agreements to be ones of suretyship, but additional evidence is necessary to aid in their interpretation. . . . When the facts are fully developed, these agreements may yet be found to be guaranty contracts.

*Id.* at 888.

Appellants also rely on *Personal Loan and Finance Co. v. Kinnin,* 56 Tenn. App. 481, 408 S.W. 2d 662; *Ballinger v. Delta Loan and Finance Co.,* 197 Tenn. 661, 277 S.W. 2d 368 (1955); and *Security Mutual Finance Corp. v. Walker,* 43 Ala. App. 130, 181 So. 2d 515 (1965). In *Ballinger* the Tennessee Supreme Court did not construe a repurchase arrangement between an automobile dealer and a retail financer to be a contract of surety or guaranty. The Court held that the dealer under the repurchase agreement was obligated, upon default of the retail purchasers, to buy back the conditional sales contracts and take possession of the repossessed automobiles from the financer even though the financer had not complied with certain provisions of the statutes dealing with conditional sales. In *Kinnin* the Tennessee Appellate Court followed *Ballinger* in holding the obligor under a repurchase agreement to the promises made in the agreement without characterizing the agreement as a contract of suretyship or guaranty. The *Kinnin* Court, however, did refer to an earlier unreported decision of the Tennessee Court of Appeals which referred to *Bal-*

*linger* as a case involving "a repurchase agreement as distinguished from a contract of guaranty. . . ." 56 Tenn. App. at ---, 408 S.W. 2d at 667. In *Walker* the Alabama Court of Appeals concluded that the automobile retail financer could not recover against the dealer on a repurchase agreement similar to the one at bar because the dealer was an endorser of the original promissory note and conditional sales contract "without recourse." The Alabama Court of Appeals relied also on *Hawkeye Securities Fire Insurance Co. v. Central Trust Co.*, 208 Iowa 573, 221 N.W. 486 (1928), which held that a repurchase agreement is not a contract of guaranty. The Iowa Supreme Court said:

> By the [repurchase] agreement the [obligor on the agreements] is in nowise purported to bind itself that the maker of the note would pay it or perform the covenants of the mortgage, and that the [obligor] would be answerable for such maker's nonfulfillment. The agreement is to repurchase in the event of default, not to pay the debt; to reacquire the paper with the rights of a holder thereof, not to pay another's debt with the merely implied right to reimbursement. The instrument is wholly lacking in evidence of intention to assume the obligation of a guarantor.

*Id.* at 577, 221 N.W. at 487 (citation omitted).

We do not think it necessary to label or to legally pigeonhole the obligations assumed by appellants on the one hand and Allentown on the other vis-a-vis the R & H debt. The question arising on the principal issue before us is simply whether these respective parties were equally obligated on the debt. In answering the question it is enough to say that the "Unconditional Guaranty" made appellants primary and unconditional obligors; while the "Repurchase Agreement" made Allentown a secondary, conditional obligor. The parties, therefore, were not equally obligated on the debt. Therefore neither N.C. Gen. Stat. § 26-5 nor the equitable principle that co-sureties on a debt may not be subrogated to the rights of the creditor against each other applies to the instant case. Neither bars Allentown, as assignee of the R & H note and the Hills' and Suttles' "guaranty" and deeds of trust, from maintaining an action against the Hills and Suttles for any amount due Allentown as assignee and foreclosing the deeds of trust in order to collect this amount.

IV.

[2]  Finally appellants argue that Allentown has not proved that there is any amount due it as a result of the transactions in question. This aspect of the case was not well presented in the trial court and the findings of the trial judge regarding it are confusing. As we understand the evidence presented, the R & H note was originally for $195,000 repayable in monthly installments of $4,337.68 each with interest accruing at the rate of 12 percent per year. R & H made three payments on this note and, being unable to continue the payments, relinquished to the bank the equipment it had purchased with the loan. One piece of the equipment was sold through Allentown's efforts while it was still in the bank's possession for $95,000 and this amount was credited to the R & H note. Allentown took possession of the smaller piece of equipment under the terms of the repurchase agreement and executed a note to the bank for $105,000 which represented the then unpaid balance on the R & H note. The bank accepted Allentown's note in full satisfaction and discharge of Allentown's obligation under the repurchase agreement. Later Allentown sold this second piece of equipment for $20,000 which was credited against Allentown's note in favor of the bank. According to the testimony of an executive vice president of Allentown, there is now due and owing on R & H's original indebtedness the sum of "approximately $92,000."

The trial court made findings on this aspect of the case as follows:

XIII. That within a few days or weeks subsequent to June 15, 1979, R & H, Allentown, Suttles and wife, and Hill and wife were all notified that said R & H Note was in default. That said note remained in default until on or about August 30, 1979 at which time Allentown executed and delivered to the Bank a new note in the principal sum of approximately One Hundred Five Thousand Dollars ($105,000.00) in which Allentown was the maker and the Bank was the payee, which sum represented the then unpaid balance on said R & H Note. The new note given by Allentown to the Bank (hereinafter referred to as Allentown Note) on or about August 30, 1979 was accepted by the Bank in satisfaction and

discharge of Allentown's obligation under said Repurchase Agreement.

APPELLANT-PETITIONER'S EXCEPTION NO. 4

XIV. That at the time said Allentown Note was delivered to and accepted by the Bank, the Bank assigned to Allentown the R & H Note, the Security Agreement, the Guaranty Agreement, and the Deeds of Trust given by Suttles and wife, and Hill and wife.

XV. That during the month of August or September of 1979, Allentown was instrumental in selling the truck pump unit for approximately Ninety-Five Thousand Dollars ($95,000.00), which sum was credited on the R & H Note.

XVI. Some time after August 30, 1979, Allentown sold the trailer pump unit for approximately Twenty Thousand Dollars ($20,000.00), which sum was credited against the Allentown Note of August 30, 1979.

It is not clear from the findings whether the proceeds received from the sale of the equipment ($115,000) were applied to the $105,000 Allentown note, in which case there would be no balance due to Allentown, or whether these proceeds were applied instead to the original $195,000 R & H note, in which case there would be a balance due Allentown.

Since both the evidence and the findings must establish that there is an amount due Allentown arising out of the transactions in question before Allentown is entitled to foreclose the deeds of trust, *see* N.C. Gen. Stat. § 45-21.16(d), the case must be remanded for further proceedings on the question of the amount, if any, due to Allentown as assignee of R & H's original obligation.

In conclusion, therefore, we have determined to modify and affirm the decisions of the Court of Appeals insofar as they hold that Allentown's status as a party to the original debt arising by virtue of the repurchase agreement is no bar to the foreclosure of the deeds of trust. We remand the case, however, to the Court of Appeals for further remand to the Superior Court for further proceedings on the question of the amount, if any, due to Allentown as assignee of R & H's original obligation.

Modified, affirmed and remanded.